## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

ASHLEY DEVON BURRUSS,

     Plaintiff,

v.                                                                          2:22-cv-392-NPM

COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

---

## ORDER

Plaintiff Ashley Burruss seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 15),[1] Burruss filed an opening brief (Doc. 20), and the Commissioner responded (Doc. 21). For the reasons discussed below, the decision of the Commissioner is affirmed.

## I.      Eligibility for Disability Benefits and the Administration's Decision

### A.      Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.   Factual and procedural history

On October 16, 2020, Burruss applied for disability insurance benefits and supplemental security income. (Tr. 141). She first asserted an onset date of September 3, 2020, but later amended the onset date to September 18, 2020. (Tr. 306). Burruss first provided anxiety as the ground for her application (Tr. 95, 118, 309), but later provided the following grounds: ADHD, PTSD, OCD, severe chronic

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

migraines, acid reflux, carpal tunnel syndrome, ovarian cyst, and fibromyalgia. (Tr. 320). As of the amended onset date, Burruss was 36 years old with a master's degree in legal studies. (Tr. 94, 315). She previously worked as a child welfare case manager, security guard, and booking officer. (Tr. 64, 310). By Burruss's account, she performs ordinary household chores, cooks simple meals, walks, drives, shops, and cares for her daughter 50% of the time. (Tr. 333-335).

On behalf of the administration, a state agency[5] denied these applications initially on January 28, 2021, and upon reconsideration on July 29, 2021. (Tr. 94-154, 155-176). At Burruss's request, Administrative Law Judge (ALJ) Raymond Rogers held a hearing on November 23, 2021. (Tr. 38). On December 6, 2021, the ALJ issued an unfavorable decision finding Burruss was not disabled. (Tr. 10-26). Burruss's timely request for review by the Administrative Appeals Council was denied. (Tr. 1-3). Burruss then brought the matter to this court, and the case is ripe for judicial review.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § § 404.1503(a), 416.903(a).

**C.     The ALJ's decision**

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.*

- 4 -

(quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is relieved of the burden of production during step five as to whether there are enough jobs someone like the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *see also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting the regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work"). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Burruss had not engaged in substantial gainful activity since September 3, 2020, the first alleged onset date. (Tr. 13). At step two, the ALJ characterized Burruss's severe impairments as: fibromyalgia; degenerative disc disease of the cervical spine; carpal tunnel syndrome; migraine headaches; ADHD, OCD, PTSD, anxiety; and depression. (*Id.*).

- 5 -

At step three, the ALJ determined Burruss did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (*Id.*).

As a predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to: lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; occasional climbing of ramps or stairs, but no climbing of ladders, ropes, or scaffolds; frequent balancing, stooping, kneeling, and crouching; no crawling; frequent forward, lateral, and overhead reaching; frequent handling and fingering; work environments of moderate noise as defined by SCO noise level III or less; no exposure to extreme bright lights like stage lights, headlights, or bright inspection lights, but normal home and office lighting is acceptable; must avoid concentrated exposure to vibration; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, or gases; no exposure to hazardous machinery or unprotected heights; able to understand, remember, or carry out simple and detailed tasks while maintaining attention and concentration for two hours at a time before requiring a regular scheduled break; low stress work defined as only occasional decision-making, only occasional changes in the work setting, and occasional interaction with coworkers, supervisors, and the public.

(Tr. 16). Consequently, the ALJ found Burruss was unable to perform any past relevant work. (Tr. 24). At step five, the ALJ found Burruss could perform other work that exists in significant numbers in the national economy. (Tr. 25). In support, a vocational expert testified that three occupations represented the kinds of jobs an individual of Burruss's age, education, work experience, and RFC can perform:

- *Marker,* (DOT# 209.587-034); SVP 2; light; 67,000 positions in the national economy;

- *Garment Sorter,* (DOT# 222.687-014); SVP 2; light; 30,000 positions in the national economy; and

- *Office Helper,* (DOT # 239.567-010); SVP 2; light; 45,000 positions in the national economy.

(Tr. 25).[6] Thus, for purposes of the Act, the ALJ concluded Burruss was not disabled from September 3, 2020, the first onset date, through December 6, 2021, the date of decision. (Tr. 26).

## II.    Analysis

Burruss's appeal presents two issues for review:

1) whether substantial evidence supports the ALJ's finding that Dr. Burford's opinion is unpersuasive, and

2) whether the ALJ adequately accounted for the effects of Burruss's migraine headaches in her RFC.

### A.    Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to the time it takes—during or before a job, such as prior experience or education—to develop necessary abilities, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. Substantial evidence supports the ALJ finding Dr. Burford's opinion unpersuasive.

Burruss claims the ALJ improperly assessed the medical opinion evidence of her treating physician, Dr. Frederick Burford, regarding the severity of her limitations. (Doc. 20 at 3-15). Accordingly, she argues that the ALJ's RFC

determination is inaccurate because it "is not logically bridge [sic] to the record." (*Id.* at 19). However, the ALJ properly evaluated Dr. Burford's opinion evidence, as discussed below.

For claims filed on or after March 27, 2017—such as this one—an ALJ must use the same set of factors to assess all medical opinions. *See* 20 C.F.R. §§ 404.1520c, 416.920c. No longer is an ALJ to afford specific evidentiary weight to certain sources' opinions, such as treating physicians. *Id.* As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability refers to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources" are consistent with the medical opinion presented. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Thus, persuasiveness, rather than weight, is the key to a proper assessment of medical opinions. 20 C.F.R. §§ 404.1520c, 404.1527(c), 416.920c,

416.927(c).

Dr. Burford treated Burruss on several occasions after the alleged onset date. (Tr. 682, 690, 697, 702, 709). His notes from these visits describe generally unremarkable findings. (Tr. 693-94, 705-06). Yet, Dr. Burford opined that Burruss was severely limited. Dr. Burford's opinion of Burruss's limitations consisted of two "check box" form questionnaires, six pages in total. (Tr. 856-57; 859-62). Neither form contained an explanation to support Dr. Burford's opinion.

The ALJ found Dr. Burford's opinion unpersuasive. (Tr. 24). As he explained:

> The undersigned is also not persuaded by the extreme assessment of Dr. Burford who has opined the claimant is limited to a reduced range of sedentary activities and who has stated the claimant would be unable to work an eight hour day. These extreme opinions are markedly inconsistent with Dr. Burford's own examination notes of the claimant during the relevant period that do not reflect any significant problems with weakness, gait abnormalities, or positive tender points for fibromyalgia. Many of Dr. Buford's examinations of the claimant have generally been unremarkable. Moreover, imaging of the claimant's neck has not shown any severe degenerative changes. Dr. Burford's assessments are also inconsistent with the treatment notes of Dr. Aslam that routinely reflect the claimant displaying a good gait and station and normal psychomotor activity.

(Tr. 24) (internal citations omitted).

Burruss claims that the ALJ made a "highly selective reference to the record," to support this conclusion. (Doc. at 14). However, the ALJ considered Burford's opinion after reviewing Burruss's treatment notes in extensive detail over several pages of his decision. (Tr. 16-24).

- 10 -

The ALJ explained how Dr. Burford's opinion is unsupported by his own records. Dr. Burford's notes show Burruss had no fatigue and was under no apparent distress. His physical exams reflect ordinary findings: no swelling of the extremities; good bowel sounds; grossly normal head, eyes, ears, nose, and throat conditions; regular heart rate and rhythm; normal lung sounds; and no apparent motor or sensory deficits. (Tr. 687, 694, 700, 706, 712). But in the questionaries that Dr. Burford submitted he opined that Burruss could not stand or walk for more than two hours total in an eight-hour period, nor could she sit for more than two hours total in an eight-hour period. (Tr. 856-57; 859-62). Dr. Burford's treatment notes not only fail to support his opined limitations but appear to contradict them. Thus, the ALJ correctly found that Dr. Burford's own records did not support his opinion concerning the severity of Burruss's condition. (Tr. 24).

Moreover, when analyzing a "check box" questionnaire, like the one Dr. Burford used, "the doctors' earlier reports should be considered as the bases for their statements." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1262 (11th Cir. 2019). Dr. Burford's treatment notes identify several impairments and self-reported symptoms, such as fibromyalgia, chronic anxiety, chronic fatigue, pain in cervical spine, insomnia, IBS, carpel tunnel, and chronic migraine. (Tr. 814-18; Doc. 20 at 10-12 (summarizing Dr. Burford's findings)). But simply identifying a litany of impairments, without explaining how those impairments limit the claimants' ability

to work, is not enough. *See Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work[.]" (internal citations omitted)). A physician must justify how his diagnoses affect the claimant's functioning. *See Wimberly v. Kijakazi*, No. 8:20-cv-902-TGW, 2021 WL 4191385, *3 (M.D. Fla. Sept. 15, 2021) (finding ALJ did not err in discounting questionnaire consisting of "mostly marked boxes" as conclusory when the physician never justified how the two diagnosed impairments caused the alleged limitations).

Dr. Burford never explains—in his questionnaire or other treatment notes— how he concluded Burruss's impairments translate into the opined limitations. This alone provides a basis for discounting his opinion. *See* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (the more supporting *explanations* presented by a medical source to support his opinions, the more persuasive it will be); *see also Anderson v. Comm'r, Soc. Sec. Admin.*, 441 F. App'x 652, 653-54 (11th Cir. 2011) (treating physician's findings were not supported by objective evidence where treatment notes merely provided a diagnosis or documented the claimant's subjective complaints); *Brown v. Comm'r of Soc. Sec.*, 442 F. App'x 507, 512 (11th Cir. 2011) (noting the ALJ provided good cause to reject the treating physician's opinions stated in forms that did not reference his treatment records or adequately explain his opinions).

The ALJ also found Dr. Burford's opinion inconsistent with the other record evidence. (Tr. 16-24). The ALJ specifically cited the treatment notes of Dr. Aslam. (Tr. 24). Those notes show Burruss having a good gait and station, normal psychomotor activity, a normal memory, organized thoughts, and a fair attention span. (Tr. 474, 502, 510, 642, 667, 807). These findings are inconsistent with Dr. Burford's opined limitations. Similarly inconsistent are Burruss's daily activities—performing ordinary household chores, cooking meals, walking, driving, shopping, and caring for her daughter 50% of the time. (Tr. 333-335). Thus, the ALJ had substantial evidence to support his conclusion that Dr. Burford's opinion was inconsistence with the other record evidence.

Consequently, the ALJ's detailed consideration of Burruss's treatment notes, medical records, and the other record evidence explain why he found Dr. Burford's questionnaire unpersuasive. He explained that Dr. Burford's evaluation is not supported by his own records and that Dr. Burford's opinion is inconsistent with other evidence in the record, which includes frequent "unremarkable" evaluations. This is sufficient. The fact Burruss identified other evidence in the record to support Dr. Burford's evaluation does not render the ALJ's decision unsupported by substantial evidence. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) ("[T]he mere fact that the record may support a contrary conclusion is not enough to

justify a reversal of the administrative findings."). Therefore, the ALJ properly assessed Dr. Burford's medical opinion evidence.

**C.    The ALJ adequately accounted for the effects of Burruss's migraine headaches in the RFC.**

Burruss claims the ALJ failed to fully account for the effects of her migraine headaches in the determination of her RFC because he "never discredited the most obvious functional limitations associated with her headaches when they occur." (Doc. 20 at 19). However, Burruss offers almost no authority to support her argument on this issue. (*Id.* at 15-19). Over the several pages she devotes to this argument, she only makes a passing reference to SSR 19-4p. (Doc. 20 at 15). Otherwise, she does not cite to a single authority. As a result, this issue is forfeited. *See Jones v. Social Security Administration,* No. 22-10507, 2022 WL 3448090, *1 (11th Cir. Aug. 17, 2022); *See also* Doc. 11 at 3 ("[E]ach point of error and corresponding response must be supported by **pinpoint** citations to the record and applicable authorities.") (emphasis in original).

In any event, the ALJ properly considered the effects of Burruss's migraine headaches. He observed that the treatment notes documenting Burruss's migraines were generally unremarkable and the treatment that she did receive was minimal and effective at diminishing the intensity and frequency of her migraines. (Tr. 14, 22). Treatment notes routinely describe Burruss as oriented and alert (Tr. 794-804, 806, 809-811) with organized thoughts, a fair attention span, normal memory, and

adequate fund of knowledge. (474, 502, 510, 642, 667, 807). The ALJ also observed that Burruss's regular activity—such as extensive cleaning, removing a popcorn ceiling, traveling out of state, and caring for herself and her daughter, 50% of the time—is inconsistent with the finding that her impairments, including her migraine headaches, caused debilitating pain. (Tr. 22). Nonetheless, the ALJ expressly "included environmental limitations to account for the claimant's migraines. . . ." (Tr. 23). Not only did he limit Burruss to a "reduced range of light exertional activities," he also limited her to

> work environments of moderate noise as defined by SCO noise level III or less; no exposure to extreme bright lights like stage lights, headlights, or bright inspection lights, but normal home and office lighting is acceptable; must avoid concentrated exposure to vibration; must avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, or gases; no exposure to hazardous machinery or unprotected heights; able to understand, remember, or carry out simple and detailed tasks while maintaining attention and concentration for two hours at a time before requiring a regular scheduled break; low stress work defined as only occasional decision-making, only occasional changes in the work setting, and occasional interaction with coworkers, supervisors, and the public.

(Tr. 16). The ALJ was required to do no more. The court may not—and will not—reweigh the evidence. *See Buckwalter,* 997 F.3d at 1132. Thus, supported by substantial evidence, the ALJ properly considered Burruss's migraine headaches and accounted for his findings by placing limitations in her RFC.

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no

error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the clerk is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on September 29, 2023.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE